IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA JORDAN | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-3470 |
| SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY | : | |
| and MICHAEL KELLY | | |

MEMORANDUM

L. Felipe Restrepo, U.S. Magistrate Judge                                    March 26, 2013

## I.   FACTUAL BACKGROUND

Plaintiff, a former bus operator for Southeastern Pennsylvania Transportation Authority ("SEPTA"), brought this suit to recover for alleged race and gender discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. §§ 951-963 ("PHRA"), race discrimination and retaliation claims under 42 U.S.C. § 1981, claims for the violation of the First, Fourth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and claims for violation of the Family and Medical Leave Act, and for wrongful termination in violation of the Pennsylvania Workers Compensation Act.

Plaintiff's claims for violation of the Family and Medical Leave Act and for wrongful termination in violation of the Pennsylvania Workers Compensation Act were dismissed on February 4, 2011 (Doc. #10) and March 19, 2012 (Doc. #24), respectively. On October 10, 2012, this Court granted in part and denied in part Defendants' Motion for Summary Judgment, dismissing Plaintiff's race and gender discrimination claims. (Doc. #52). Plaintiff's remaining retaliation claim proceeded to trial.

1

Beginning on December 3, 2012, this Court presided over a three and one-half day jury trial for Plaintiff's retaliation claim. Plaintiff alleged five distinct adverse employment actions within her retaliation claim and the jury considered each individually. On December 6, 2012, the jury returned a verdict in favor of Plaintiff on one of the five claims. The jury found that SEPTA had retaliated against Plaintiff by denying her sick benefits and awarded Plaintiff $30,000 in monetary damages. Plaintiff now seeks attorney's fees and costs, as well as six weeks of back-pay. (See Pl.'s Mot. for Attorney's Fees and Costs ("Pl.'s Fee Mot.") (Doc. #82)).

**A. Motion for Attorneys' Fees and Costs**

As noted, Plaintiff brought this action pursuant to 42 U.S.C. § 1981 and Title VII. Reasonable attorney's fees may, at the discretion of the Court, be awarded to a party that successfully litigates claims pursuant to § 1981 or Title VII. See 42 U.S.C. §§ 1998(b) and 200e-5(k). In civil rights cases, the Court uses the "lodestar" formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Although the loadstar is presumed to be the reasonable fee, the district court has the discretion to make certain adjustments in response to specific objections made by the opposing party. Interfaith Community Organization v. Honeywell, 426 F.3d 694, 711 (3d Cir. 2005).

Plaintiff's counsel Olugbenga O. Obiona, Esquire, claims counsel fees and costs in the revised amount of $267,678.50. (See Pl.'s Reply to Def.'s Opp. to Pl's Mot. for Attorney's Fees and Costs ("Pl.'s Reply Br.") (Doc. #92). This figure includes $226,639.50 in fees for the legal services of Mr. Abiona, $29,547 in fees for the legal services of Albert Mitchell, Esquire, $5,864.00 in fees for paralegal services, and $5,628.00 in litigation expenses. (See Pl.'s Reply

Br. Ex. 1.) To justify the amount claimed, Mr. Abiona attaches his own supplemental certification incorporating his original "statement of legal fees and costs for services rendered in this case" by his law office and revising the amount claimed.

**1. Reasonable Rates**

As a threshold matter, attorney's fees awarded are to be based on market rates in the relevant community for the services rendered.

Plaintiff asserts that Mr. Abiona's hourly rate of $347.50 per hour is reasonable within the community for an attorney of like experience performing comparable work. Plaintiff presents the certification of Willan Joseph, Esquire and the CLS Fee Schedule, Effective June 23, 2011 ("CLS Fee Schedule") in support of the reasonableness of the requested rate. (See Pl.'s Fee Mot. Ex. 1). Mr. Abiona further certifies that $400 per hour is his customary rate. Defendants object to Mr. Abiona's claimed rate and contend that it should be reduced to a $340 per hour rate.

We are convinced that the requested rate is reasonable within the community. The claimed rate comports with the CLS Fee Schedule. Courts in this district routinely turn to this schedule to determine the reasonableness of fees. See, e.g., Maldonado v. Houstoun, 256 F.3d 181, 187 (3d Cir. 2001). According the CLS Fee Schedule, attorneys in the Philadelphia community with twenty-one to twenty-five years of experience are compensated at hourly rates from $325-$370. Mr. Abiona's twenty-three years of experience places him within the middle of that range. Thus, Mr. Abiona's requested rate of $347.50 – a rate in the middle of the CLS Fee Schedule – is reasonable.

Defendants likewise object to Mr. Michell's request for an hourly rate of $315 per hour. Defendants note that Mr. Michell is an attorney with sixteen years experience. Defendants also note that the CLS Fee Schedule provides a billing rate for an attorney with sixteen to twenty years of experience of $305-$350. Defendants contend that Mr. Michell, as an attorney with sixteen years experience, should be reduced to $305 per hour because of the minor role that he played in litigating the matter and because Plaintiff has presented no evidence that warrants a rate over the lowest end of the CLS range. Upon consideration of all relevant evidence, we find that the requested rate of $315 is reasonable. We therefore will apply this reasonable rate in our loadstar calculation.

**2. Reasonable Time Expended**

Defendants' overriding objection to Plaintiff's motion is that her counsel's fees and costs are excessive and improper and should accordingly be reduced. In furtherance of this objection, they make the following specific arguments:

*i. Mr. Michell's Work was Unnecessary and Duplicative*

Initially, Defendants challenge the number of hours Mr. Michell billed as unnecessary and duplicative. Mr. Michell has billed for 93.8 hours in this case. As Defendants point out, Mr. Michell played a very limited role in the litigation. He performed no work in the case until his entry of appearance on November 1, 2012, approximately one month prior to trial and well after completion of the discovery and summary judgment phases of the case. At trial, Mr. Michell did not deliver the opening statement, closing argument, or cross-examine any witnesses. He directed only one witness, Fred Melhuish, whose testimony was brief. Because of Mr. Michell's

4

circumscribed role at trial, I will allow Mr. Michell to bill one hour for the testimony taken, and otherwise deny Mr. Michell fees for the remaining 31.5 hours he spent at trial.

Mr. Michell also seeks 7.6 hours for reviewing dispositive motions, proposed jury instructions, pretrial memorandum, and motions in limine and 19.5 hours for reviewing and digesting deposition transcripts. See Plaintiff's Exhibit D. Upon comparison of Mr. Michell's Statement of Legal Fees with Mr. Abiona's, however, I found 22.1 of these hours of Mr. Michell's work to be unnecessarily duplicative. Mr. Abiona had already reviewed the motions and had likewise already summarized the deposition transcripts. Thus, I will deny Mr. Michell 22.1 hours for the time he spent duplicating Mr. Abiona's efforts. See Evans v. Port Auth., 273 F.3d 346, 361 (3d. Cir. 2001) (finding duplicative billing by two law partners in Title VII case unreasonable). I will award Mr. Michell fees for the remaining 5 hours he spent reviewing and digesting the deposition transcript of Fred Melhuish – the witness whom he directed at trial.

Finally, Mr. Michell reports having spent 27.5 hours preparing for trial, including preparation of Fred Melhuish's examination. I find it reasonable for Mr. Abiona, who is a sole practitioner, to enlist the assistance of Mr. Michell in preparing for trial. See James v. Norton, 176 F.Supp.2d 385, 399 (E.D.Pa. Nov. 3, 2001) (finding it reasonable for Mr. Abiona to enlist Mr. Michell's help as a "sounding board" in preparation for trial and awarding Mr. Michell fees for such efforts). Accordingly, I will award Mr. Michell the 27.5 hours he spent helping Mr. Abiona prepare for trial.

In sum, I find that 40.2 hours of Mr. Michell's expenses were reasonable, and I will strike the remaining 53.6 hours of his fee request.

*ii. Plaintiff's Counsel is Improperly Seeking to Recover Fees for Secretarial Work Under the Guise of Paralegal Work.*

Plaintiff requests 73.3 hours of paralegal time calculated at the rate of $80.00 per hour. Defendants argue that the fee should be drastically reduced, if not barred in its entirety, because 41.3 hours of the entries for paralegal work are for copying, faxing, and delivering documents, and the remaining 32 hours was spent attending trial where Ms. Hernandez did not appear to play even a supporting role. (See Def.'s Opp. to Pl.'s Mot. at 10).

"Purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them," Missouri v. Jenkins, 491 U.S. 274, 288 (1989), as "the cost of clerical work, such as copying and filing, are ordinarily considered to be part of an attorney's rate as office overhead." Powell v. SEPTA, 2007 WL 1795686 *6 (E.D.Pa. June 19, 2007). In examining Plaintiff's counsel's supplemental certification, we agree with Defendants that 41.3 of Ms. Hernandez's claimed time was spent on clerical tasks. Plaintiff offers no explanation why Defendants should pay these fees and does not suggest that they constitute paralegal work. Since the costs of clerical work, such as filing and copying, are ordinarily considered to be part of an attorney's rate as office overhead, they will not be compensated. See Sheffer v. Experien Info Solutions, Inc., 290 F.Supp.2d 538, 549 (E.D.Pa. 2003) (finding clerical work considered part of attorney's hourly rate as office overhead). We also agree with Defendants that Plaintiff's counsel should not be able to recover fees for the time Ms. Hernandez spent attending trial. I did not see Ms. Hernandez do anything at trial which assisted in the case – not even clerical work such as handing Mr. Abiona documents. Thus, I disallow Mr. Abiona's billings for Ms. Hernandez's attendance at trial.

*iii. Plaintiff's Counsel Charged Excessive Amounts of Time for Much of the Work Performed.*

Defendants claim that Mr. Abiona has billed an unreasonable number of attorney-hours for a wide range of legal work including discovery, correspondence, motions, and trial preparation.

First, Defendants ask this Court to reduce Mr. Abiona's hours for the following tasks:

1. drafting Plaintiff's complaint (14 hours)
2. responding to Defendants' four-page motion to dismiss (25 hours)
3. drafting fifteen page partial motion for summary judgment as to one count (25 hours)
4. drafting a two-page motion for protective order (10 hours)
5. reviewing defendants' brief in opposition to motion for partial summary judgment (4 hours)
6. reviewing and responding to defendants cross motion for partial summary judgment as to one count (74 hours)
7. responding to Defendant's motion for summary judgment (40.3 hours)
8. drafting plaintiff's three-page motion in limine (14 hours)

In total, defendants request a reduction from 206.3 hours to 103.2 hours. In support of its request, Defendants offer their own opinion that the requested number of hours is unreasonable, as the tasks performed should have taken one-half of the time Mr. Abiona submits.

While the Defendants have understated the time required to prepare and/or analyze several of these documents, in view of Mr. Abiona's high hourly rate, some of this time was excessive. See Rainey v. Phila Hous. Auth., 832 F.Supp. 127, 130 (E.D. Pa. 1993) (noting "the

higher the allowed hourly rate commanded based on skill and experience, the shorter the time it should require an attorney to perform a particular task"). Therefore, I will permit Mr. Abiona to collect a fee for 7 hours drafting Plaintiff's complaint, 12.5 hours for responding to Defendants' motion to dismiss, 15 hours for drafting partial motion for summary judgment, 5 hours for drafting motion for protective order, 2 hours for reviewing defendants' brief in opposition to motion for partial summary judgment, 40 hours for reviewing and responding to defendants cross motion for partial summary judgment, 35 hours for responding to Defendant's motion for summary judgment, and 5 hours for drafting Plaintiff's motion in limine. Accordingly, I will reduce Mr. Abiona's billable time by 84.8 hours.

The Defendants also ask this Court to reduce the amount of time Mr. Abiona spent on depositions in this case. Defendants accurately point out that Mr. Abiona spent a considerably longer period at depositions than the time recorded by the stenographer. Accordingly, Mr. Abiona's hours will be reduced by 22.9 hours to reflect the actual length of the depositions.[1]

### 3. Lodestar Calculation

---

[1]

| Date | Deponent | Claimed Length | Stenographer's times | Actual Length |
|---|---|---|---|---|
| 3/31/11 | V. Jerry | 4.00 | 11:13 – 12:04 | 0.51 |
| 3/31/11 | J. Carson | 4.00 | 12:14 – 1:59 | 1.45 |
| 4/6/11 | J. Gerena | 4.00 | 10:17 – 11:06 | 0.49 |
| 4/6/11 | F. Melhuish | 4.00 | 12:08 – 3:09 | 3.01 |
| 4/8/11 | K. Healy | 5.00 | 10:18 – 12:35 | 2.17 |
| 5/4/11 | C. Moore | 2.00 | 10:14 – 10:38 | 0.24 |
| 5/6/11 | T. Comber | 3.00 | 10:23 – 11:34 | 1.11 |
| 5/6/11 | D. Rogers | 3.00 | 1:10 – 1:54 | 0.54 |
| 5/10/11 | M. Kelly | 4.00 | 10:14 – 11:17 | 1.03 |
| 6/14/11 | V. Dugan | 3.00 | 1:56 – 2:45 | 0.49 |
|  |  | **36.00** |  | **13.06** |

Based on the adjustments made above, we will calculate the lodestar amount for the reasonably expended time at a reasonable rate.[2] This loadstar amount is $60,173.75 less than the requested $262,050.50 total.

The loadstar calculation, however, does not complete the fee inquiry. Defendants urge a negative multiplier be applied to the loadstar value in light of plaintiff's limited success. See Hensley, 461 U.S. at 434 (prohibiting payment for time spent on unsuccessful claims). Defendants point to the limited success of her retaliation claim as well as the dismissal of her race discrimination, gender discrimination, FMLA, and Wrongful Termination claims.

It is well-established in the Third Circuit that "counsel fees should only be awarded to the extent that the litigant was successful." Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1042 (3d Cir. 1996). The Supreme Court has also made clear that in some cases, as here, "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories" making it "difficult to divide the hours expended on a claim-by-claim basis." Hensley, 461 U.S. at 435. "Such a lawsuit," Hensley explained, "cannot be viewed as a series of distinct claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id.

In an effort to measure a Plaintiff's success, the Third Circuit has indicated that a court may consider the relief awarded as compared to that requested. Washington, 89 F.3d at 1042.

---

[2]

|  | Claimed Hours | Reduced by | Total Hours | Rate | Subtotal |
|---|---|---|---|---|---|
| Mr. Michell | 93.8 | 53.6 | 40.2 | $315 | $12,663.00 |
| Mr. Abiona | 652.20 | 107.7 | 544.5 | $347.50 | $189,213.75 |
|  | 73.3 | 73.3 | 0 | $80 | $0.00 |
| **TOTAL** |  |  |  |  | **$201,876.75** |

While this success, or lack thereof, may be taken into consideration when awarding fees, the court may not attempt to fix a ratio between the fees and damages awarded. Id.

Here, Plaintiff obtained an award of $30,000. This award is not insubstantial. However, Plaintiff did not prevail on four of the five counts she asserted in the complaint or against Mr. Kelly. Moreover, on her only successful claim, Plaintiff recovered substantially less than she requested, and the jury found for the Defendants on four of the five alleged acts of retaliation. The court will adjust the loadstar downward by fifty percent (50%) because of Plaintiff's partial lack of success on the merits. See Washington, 83 F.3d at 1044 (concluding that district court was well within its broad discretion when it discounted the fees by fifty percent for partial lack of success where plaintiff prevailed on retaliation claim but failed on discrimination claim); McGuffey v. Brink's, Inc., 598 F.Supp.2d 659, 675 (E.D.Pa. 2009) (quoting Hensley, 461 U.S. at 436–37) ("'The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'"). Plaintiff is entitled to $100,938.38 in attorney's fees.

**4. Excessive Costs**

Finally, Defendants challenge Plaintiff's request for $5,628.00 in costs. Defendants object to the fees for photocopying and costs related to Plaintiff's unsuccessful claims.

First, Defendants suggest that duplicating costs should be billed at $.15 per page, rather than $.25 per page. We find that charging $.25 per page for photocopying costs is reasonable. See, e.g., Norton, 176 F.Supp.2d at 400 (permitting assessment of photocopying costs at $.25 per page); Churchill v. Star Enters., 1998 WL 254080, *10 (E.D.Pa. Apr. 17, 1998) (allowing photocopying costs at $.25 per page as "very reasonable").

10

Defendants also challenge $1,569.50 in deposition transcript costs contending that they are solely related to Plaintiff's unsuccessful claims. Although Defendants claim that these costs are related <u>only</u> to Plaintiff's unsuccessful claims, some of the testimony was relevant to Plaintiff's retaliation claim and to her credibility generally. We are not convinced that the $1,569.50 in deposition transcript costs can be delineated as chargers related solely to Plaintiff's unsuccessful claims. As such, we will award Plaintiff's request for $5,628.00 in costs.

**B. Backpay**

The jury found that Defendant SEPTA retaliated against Plaintiff in violation of Title VII when it denied her application for sick leave benefits. As a result, Plaintiff requests six weeks of pay back for her sick leave benefits denied by Defendant. Title VII authorizes a back pay award as an equitable remedy for retaliation. 42 U.S.C. § 2000e-5(g)(1). Moreover, lost fringe benefits, such as sick pay, are components of an equitable back pay award under Title VII. <u>See</u> <u>Suggs v. ServiceMaster Educ. Food Mgmt.</u>, 72 F.3d 1228, 1233 (6th Cir. 1996) (a Title VII back pay award "should include the salary, including any raises, which plaintiff would have received but for the discrimination, as well sick leave, vacation pay, pension benefits and other fringe benefits he would have received but for the discrimination").

Defendants point to the Third Circuit's holding in <u>Spencer v. Wal-Mart Stores, Inc.</u>, 469 F.3d 311, 317 (3d Cir. 2006), to support the proposition that, absent a successful constructive discharge claim, Plaintiff is not entitled to a back pay award. In <u>Spencer</u>, however, the Plaintiff was seeking back pay for a successful <u>hostile work environment</u> claim. 469 F.3d at 317. Here, plaintiff is seeking back pay for a successful <u>retaliation</u> claim. Contrary to Defendants' contention, this is not a distinction without a difference. <u>See e.g.</u>, <u>Hare v. Potter</u>, 549 F.Supp.2d

11

688, 693 (E.D.Pa. Nov. 30, 2007) ("Unlike plaintiffs in hostile work environment cases, in discriminatory promotion or equal pay cases, plaintiffs who leave their employment absent a constructive discharge could be entitled to a remedy covering the period during which the discrimination occurred up to the date of resignation.") (internal citations omitted). In holding that "a successful hostile work environment claim alone, without a successful constructive discharge claim, is insufficient to support a back pay award," Spencer, 469 F.3d at 317, the Third Circuit reasoned that "if a hostile work environment does not rise to the level where one is forced to abandon the job, loss of pay is not an issue." Id. Unlike the hostile work environment context, loss of pay can be an issue in a retaliation claim absent a successful constructive discharge claim. This is especially true where, as here, the explicit retaliatory injury suffered was the denial of sick pay benefits – the damages unequivocally being the loss of pay the plaintiff would have received but for the retaliatory conduct. Accordingly, I find that the equitable remedy is to "restore the plaintiff ... to the position [s]he otherwise would have been in absent [retaliation]," Gunby v. Pa. Elec. Co., 840 F.2d 1108, 1122 (3d Cir.1988), by granting Plaintiff's request for $6,396.00 in back pay.[3]

## II. CONCLUSION

For the reasons set forth above, Plaintiff's motion for attorney's fees and costs and for an order to make whole is granted, in part, with reductions as described above. An appropriate order follows.

---

[3] In arguing that the Court should deny Plaintiff's motion to make whole, Defendants have attached an affidavit from Jeanette Gerena asserting that Plaintiff would have received a net amount of $340.46 per week had her sick benefits application been approved. Defendants, however, failed to introduce this evidence at trial despite the parties' agreement and this Court's instruction that all evidence related to damages, including back pay, be presented at trial. Accordingly, our decision is based on the uncontroverted evidence presented at trial that that Plaintiff sought six weeks of sick time benefit and that her weekly pay rate was $1,066.

12